UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES** | : | Case No.: 1:23CR00022-001 |
| | : | |
| v. | : | |
| | : | |
| **JUSTIN RIGGS** | : | Judge: Hon. Stephanie A. Gallagher |

## AFFIDAVIT OF JACK DONSON

I, Jack Donson, hereby declare under penalty of perjury that the following is true and correct.

## STATEMENT OF EXPERTISE

I am the Founder of My Federal Prison Consultant, which I started after retiring from a career with the Federal Bureau of Prisons (BOP). I am also the executive director of a non-profit organization called the Federal Prison Education and Reform Alliance. I provide consulting, training and expert witness testimony on federal prison issues. I also provide BOP training, education and support to the federal justice community, so they have a better understanding of policy and process for their advocacy and representation. I have worked directly with federal offenders for over 36 years and have testified in district courts throughout the country.

I was employed by the BOP for twenty-three years working directly with inmates and staff in security classification, correctional programs and treatment. I actively follow policy initiatives and routinely attend training conferences, including the U.S. Sentencing Commission conference, which includes a presentation by BOP staff on current federal prison issues. I am a member of both the American Bar Association (ABA) and National Association of Criminal Defense Lawyers' (NACDL) corrections committees. I have authored articles and book chapters on federal prison matters in national print media, legal periodicals and ABA publications.

During my career, I worked directly with inmates and staff as a <u>Correctional Treatment Specialist</u> (case manager & case management coordinator). I was responsible for counseling, security classification, inmate discipline, program placement/evaluation and re-entry. During my career, I completed hundreds of training courses including basic and advanced case management training and leadership related courses. I was also assigned collateral administrative responsibilities including training case management staff, mentoring, local policy writing, conducting facility audits, and overseeing institutional programs. I have worked in minimum (camp), low, medium, administrative (pre-trial and high security), and Witness Security (PCU) units. On several occasions, I was assigned to the BOP Philadelphia Regional Office (NERO) and the New York City Community Corrections Office. I have expertise with U.S. Parole Commission policy and process and BOP sentence computations. Prior to working for the federal government, I was employed in the Commonwealth of Pennsylvania as a Probation & Parole Officer where I wrote pre-sentence investigations, supervised the work release program and managed a caseload of adult and juvenile offenders.

My skillset is unique, policy-focused, and has been molded by my regular interaction with BOP staff and administrators as well as inmates in the trenches of the federal prison system. This interaction has continued during my retirement through daily contacts with attorneys, non-governmental organizations, and email correspondence with incarcerated people from around the prison system. In my role with FedCURE as their National Director for Inmate Programs and Services, I regularly interacted with BOP central office staff regarding prison issues and was solicited for feedback on legislation such as the First Step Act. I have conducted First Step Act related training for the NACDL, AOUSC and federal defender organizations. I recently attended meetings with the GAO regarding the First Step Act and DOJ for the Access to Justice initiative related to BOP legal communication.

I have been qualified as an expert witness in accordance with Federal Rule 702 (Daubert Standards) and have never been denied the ability to testify as an expert witness on BOP related issues.

I hold a bachelor's degree in Sociology/Anthropology and a Master of Science Degree in Criminal Justice. Aside from consulting, I was a Lecturer at Marywood University for several years and taught Criminal Justice courses, including one entitled <u>The American Prison</u>. A true and correct copy of my *Curriculum Vitae* is attached. I have personal knowledge of the facts stated herein and can testify competently thereto if called as a witness in this matter.

## SCOPE OF REVIEW

I have been asked by counsel to review the pre-sentence investigation and Forensic Neuropsychological Evaluation of Jonathan DeRight and provide my professional opinion regarding the difficulties Mr. Riggs's faces in a federal prison setting given his former capacity as a law enforcement officer. I have also assessed his security classification and correctional programs needs to determine the most appropriate facility designation for his rehabilitation and safety. I have reviewed materials and offer my opinion from a BOP correctional treatment perspective.

## SUMMARY OF FINDINGS

Mr. Riggs will encounter several challenges during a term of incarceration. His former law enforcement capacity will likely result in a designation outside the mid-Atlantic region to provide for his protection. In addition, while he has security points commensurate with minimum security, the BOP considers the overall instant offense behavior when classifying a person regardless of the crime of conviction. The PSR language about the sale of an automatic weapon and making the informant "*go away*" are elements that allow the BOP to apply the greatest severity public safety factor to preclude federal prison camp placement. Any additional custodial term will likely be served far from his family and among prisoners who have more of a criminal orientation serving lengthier sentences. The BOP has broad discretion on classification issues so it would be practical for the court to make specific findings in the Statement of Reasons regarding the instant offense behavior, as well as a more specific judicial recommendation regarding the designated facility to meet his safety needs.

## FACILITY & INMATE CLASSIFICATION (BRAVO)

The BOP classifies facilities into several categories including minimum security (camp), low and medium security federal correctional facilities, (FCIs), high security U.S. penitentiaries (USP) and administrative (MCC/MDC/FDC & Medical Centers). In recent years, the agency has developed "*satellite*" low security facilities and various specialized restrictive housing unit programs including reintegration housing units (RHU), special management units (SMU) and communication management units (CMU). The last BOP SMU was recently closed after it became the focus of abusive correctional practices and the murders of several inmates housed there. [1]

Inmates also have a security classification, which is based on a point system and public safety factors (PSFs) to determine their required level of control and supervision. The inmate classification tool is known as "BRAVO" (Bureau Risk Assessment Verification and Observation). Some of the factors used in determining a person's security classification includes their age, criminal history points, violence and/or escape history and characteristics of the instant offense. Each factor has a corresponding point value, which are then totaled to determine an overall security level. Below is a chart based on the BOP classification manual (CPD/CPB, Number P5100.08, Inmate Security Designation and Custody Classification).[2]

| Security Level | Male | Female |
|---|---|---|
| MINIMUM | 0-11 Points | 0-15 Points |
| LOW | 12-15 Points | 16-30 Points |
| MEDIUM | 16-23 Points | N/A |
| HIGH | 24 + Points | 31 + Points |

After reviewing the PSR, I have estimated Mr. Riggs will be assigned eleven (11) security points, which is ordinarily minimum security. However, the BOP takes a conservative approach to classification and considers elements of the overall instant offense behavior described in the PSR that may result in classifying the instant offense as a greatest severity offense. Chapter 2, page 2 of the above referenced manual indicates:

"*CURRENT OFFENSE. For classification purposes, the current offense is the most severe documented instant offense behavior regardless of the conviction offense.*"

Greatest severity offenses are assigned a "*public safety factor*" (PSF) and preclude a minimum security (camp) designation unless it is waived. A low security, FCI will be problematic because he will be housed with offenders with more criminal orientation serving lengthier sentences.

---

[1] https://www.washlaw.org/wp-content/uploads/2023/07/Cruel-and-Usual-An-Investigation-Into-Prison-Abuse-at-USP-Thomson.pdf
[2] https://www.bop.gov/policy/progstat/5100_008cn.pdf

3

Minimum security prisons referred to as "*camps*" are typically docile environments involving dormitory type living arrangements with predominately non-violent offenders serving shorter periods of incarceration. A low security, FCI will involve more of a stressful environment for someone in a previous law enforcement capacity. While the BOP has the discretion to designate inmates above or below their scored classification in accordance with the classification manual, it is unlikely they will apply it in this case unless the court made a recommendation.

Regardless of the specific security level environment, there are certain inmate sub-cultural practices that occur within a prison setting that will be difficult for Mr. Riggs to navigate. An unfortunate reality in the federal prison system is that when new inmates arrive, they are immediately approached by other inmates to "*show their papers*" in a vetting process. This process is done to identify cooperators (aka: "*rats*") and sex offenders (aka: "*chomos*"). When inmates are unable to produce court documents, other inmates will go as far as having people in the community conduct Google and PACER searches to determine the crime and look for irregularities in docket entries, case information, etc. One of the goals of the vetting process is the monetary aspect whereby individual inmates as well as gang members extort vulnerable inmates to offer them protection.

The vetting process has always been problematic within the prison system and as recently as November 18, 2020, a high severity disciplinary infraction was added to the inmate code of conduct "ACT # 231- *Requesting, demanding, pressuring, or otherwise intentionally creating a situation, which causes an inmate to produce or display his/her own court documents for any unauthorized purpose to another inmate.*"

It is unknown how Mr. Riggs will react when he is vetted, which raises the possibility of protective custody and isolation in the special housing unit known as the SHU. The SHU is often referred to as solitary confinement and involves a separate unit where inmates are locked in their cells for 23 hours daily, with one hour of recreation that is ordinarily done in a small room or outdoor cage. They are fed in their cells, restricted to one telephone call every thirty days and have additional visiting limitations. SHU is also the area within the prison where most suicides occur.

Confinement to a SHU can come about when an inmate voluntarily requests protective custody (PC) or when staff perceive an inmate is at risk for victimization. Due to the increase of protection cases, the BOP developed a pilot reintegration housing unit known as the RHU in 2016, which subsequently expanded to several facilities. The policy defines the unit as "*The RHU targets male inmates identified as verified or unverified protective custody cases, who consistently refuse to enter general population, ordinarily at multiple locations.*"[3] One of the issues with the RHU program is that inmates often need to repeat a cycle of isolation, sometimes for months at a time before being transferred to an RHU. Prolonged isolation is to discourage the practice of inmates manipulating a transfer who have no legitimate/verified threat. RHUs are very restrictive, self-contained units, who do not interact with the general population of the facility. They are undesirable because of the limited programs, services and outdoor recreation opportunities. In February of last year, former BOP Director Collette Peters testified before the Judiciary Committee that there were approximately 11,000 inmates in restrictive housing. Aside from the protection of

---

[3] https://www.bop.gov/policy/om/003_2016.pdf

4

inmates, one of the main goals of the RHU is to eventually allow prisoners to assimilate back into the general population of a different facility.

Inmates who do not succumb to the pressure of requesting protective custody after being threatened often move within the population with other similarly situated inmates for safety, referred to as a "*car*." A car is a group of inmates that collectively support and protect each other within the concept of that there is safety in numbers. They also avoid certain areas of a facility that are void of cameras and staffing. Mr. Riggs will also face difficulty in being accepted into a car should his law enforcement capacity become known.

Former law enforcement officers are also targets of other inmates for obvious reasons and they are also looked down on by some staff because of the betrayal of their oath of office. "*Dirty cops*" are despised within the general law enforcement community that includes BOP correctional officers.

## LAW ENFORCEMETN MANGEMENT

The BOP recognizes the challenges law enforcement officers have in a correctional setting and provides further monitoring and protection within the <u>Central Inmate Monitoring Program</u> referred to as 'CIM."[4] Inmates meeting criteria for specific categories are more carefully monitored for further protections and overall inmate management. The CIM category appropriate for Mr. Riggs is called "*Special Supervision*." In my experience working for the BOP and since retirement, the BOP designates law enforcement officials outside the region of their jurisdiction, especially when they are directly involved in drug arrests. When I worked for the agency in the northeast region, I would often receive inmates on my caseload from the mid-Atlantic and even south-east region who were former law enforcement and correctional officers. While these measures are designed to offer further protection, the BOP practices for adhering to policy have been under more scrutiny than ever given staff shortages.

More recently, the DOJ-IG released a report entitled <u>Top Management and Performance Challenges Facing the Department of Justice</u>[5] which indicated:

"*Among the many challenges facing the BOP is its persistent inability to address staffing shortages in key positions, lack of sufficient funding to repair its crumbling infrastructure, and the introduction of contraband at its prisons. These staffing, infrastructure, and contraband issues have seriously compromised the safety and security of staff and inmates.*"

In addition, inmates with CIM assignments require an activity clearance to participate in community programs like residential re-entry center placement. It is uncertain whether Mr. Riggs will receive a clearance to be placed in a contract facility within the area where he worked in a law enforcement capacity. Ordinarily, inmates like Mr. Riggs who are not eligible for First Step Act credits have the potential for up to 12 months residential re-entry center placement.

---

[4] www.bop.gov/policy/progstat/5180_005.pdf
[5] https://oig.justice.gov/reports/top-management-and-performance-challenges-facing-department-justice-2024

## CORRECTIONAL TREATMENT PROGRAMS

From a case management perspective, Mr. Riggs has no mandatory educational requirements or need for vocational training. It is unlikely he will be able to participate in an intensive program like the Residential Drug Abuse Program (RDAP) given the limited substance abuse history documented in the PSR, as well as the time needed to complete the program and aftercare based on the plea agreement. In addition, there are program waiting lists that prioritize First Step Act eligible offenders as well as program interruptions due to understaffing. Like understaffing, BOP programming has also come under greater scrutiny. An article written by Families Against Mandatory Minimums, known as FAMM and published by Medium, confirms the problem with the availability of BOP programs. Specifically, the article written about the FCI Dublin "*Rape Club*" which gained national media attention for the widespread abuse of federal prisoners after a warden was accused, then sentenced for the sexual abuse, states:

" *It is an open secret that rehabilitative programming in the BOP is a problem. The Special Master was provided with a table of programs allegedly offered at FCI Dublin. She found, however, that many of the programs that the BOP said were offered had not been available to people in custody for years. Further, waitlists were extensive, staff were as confused as residents about which programs were and were not offered, and the programming that did exist was rarely as described.*"[6]

It is unlikely further incarceration would result in the accomplishment of significant correctional treatment program goals.

## CONCLUSION

Mr. Rigg's former law enforcement capacity will likely result in his designation farther from his family and community support structure. It will also make a period of incarceration more difficult, stressful and punitive. He has minimal rehabilitation needs and further incarceration would be impractical should the court determine that individual and community deterrence have been accomplished by his lengthy local jail placement. Should an additional custodial term be required, it would be practical for the court to clarify the classification factors the BOP can consider when processing his designation. It is within the scope of the court and purpose of the Statement of Reasons document to address the machine gun behavior and statements related to the informant. Should the court not want to address these issues, a more targeted judicial recommendation could be provided for the BOP to consider but is non-binding.

The most practical language for such a recommendation would be as follows:

"*The court recommends Mr. Riggs be designated to a minimum-security prison, "Camp" due to his former capacity as a law enforcement officer and lack of an escape or criminal history. The court does not object to a waiver of the public safety factor should the BOP determine it to be appropriate.*

Executed on the 15th day of May 2025

---

[6] https://medium.com/famm/the-horrors-of-fci-dublin-a-look-inside-a-chaotic-prison-435ca0e0fef8

Jack T. Donson, President and Founder _____

BP-A0337  **INMATE LOAD AND SECURITY DESIGNATION** CDFRM
JUNE 10
U.S. DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISONS

### INMATE LOAD DATA

| Field | Value |
|---|---|
| 1. REGISTER NUMBER: | |
| 2. LAST NAME | RIGGS |
| 3. FIRST NAME | Justin |
| 4. MIDDLE | |
| 5. SUFFIX | |
| 6. RACE | W |
| 7. SEX | M |
| 8. ETHNIC ORIGIN | NH |
| 9. DATE OF BIRTH | 11/27/1989 |
| 10. OFFENSE/SENTENCE | 21 USC 841 , 846 |
| 11. FBI NUMBER | |
| 12. SSN NUMBER | |
| 13. STATE OF BIRTH | |
| 14. OR COUNTRY OF BIRTH | |
| 15. CITIZENSHIP | |
| 16. ADDRESS-STREET | |
| 17. CITY | |
| 18. STATE | MD |
| 19. ZIP | 21742 |
| 20. OR FOREIGN COUNTRY | |
| 21. HEIGHT | FT   IN |
| 22. WEIGHT | LBS |
| 23. HAIR COLOR | |
| 24. EYE COLOR | |
| 25. ARS ASSIGNMENT: | |

### SECURITY DESIGNATION DATA

| # | Field | Options | Score |
|---|---|---|---|
| 1. | JUDGE | Hon. Stephanie A. Gallagher | |
| 2. | REC FACILITY | | |
| 3. | REC PROGRAM | | |
| 4. | USM OFFICE | D/MD | |
| 5. | VOLUNTARY SURRENDER STATUS | 0 = NO    (-3) = YES | 0 |
| 5a. | VOLUNTARY SURRENDER DATE: | | |
| 5b. | VOLUNTARY SURRENDER LOCATION: | | |
| 6. | MONTHS TO RELEASE : | | |
| 7. | SEVERITY OF CURRENT OFFENSE | 0 = LOWEST  1 = LOW MODERATE  3 = MODERATE  5 = HIGH  7 = GREATEST | 7 |
| 8. | CRIMINAL HISTORY SCORE | 0 = 0-1  2 = 2-3  4 = 4-6  6 = 7-9  8 = 10-12  10 = 13+ | 0 |
| 8a. | SOURCE OF DOCUMENTED | - PRESENTENCE INVESTIGATION REPORT or  - NCIC III | |
| 9. | HISTORY OF VIOLENCE  MINOR / SERIOUS | NONE 0/0  >15 YEARS 1/2  10-15 YEARS 1/4  5-10 YEARS 3/6  <5 YEARS 5/7 | 0 |
| 10. | HISTORY OF ESCAPE OR ATTEMPTS  MINOR / SERIOUS | NONE 0/0  >15 YEARS 1/3(S)  >10 YEARS 1/3(S)  5-10 YEARS 2/3(S)  <5 YEARS 3/3(S) | 0 |
| 11. | TYPE OF DETAINER | 0 = NONE  1 = LOWEST/LOW MODERATE  3 = MODERATE  5 = HIGH  7 = GREATEST | 0 |
| 12. | AGE | 0 = 55 and over  2 = 36 through 54  4 = 25 through 35  8 = 24 or less | 4 |
| 13. | EDUCATION LEVEL | 0 = Verified High School Degree or GED  1 = Entrolled in and making satisfactory progress in GED Program  2 = No verified High School Degree/GED and not participating in GED Program | 0 |
| 13.a | HIGHEST GRADE COMPLETED | | |
| 14. | DRUG/ALCOHOL ABUSE | 0 = NEVER/>5 Years   1 = <5 Years | 0 |
| 15. | SECURITY POINT TOTAL | | 11 |
| 16. | PUBLIC SAFETY FACTORS | A-NONE  B-DISRUPTIVE GROUP (males only)  C-GREATEST SEVERITY OFFENSE (males only)  F-SEX OFFENDER  G-THREAT TO GOVERNMENT OFFICIALS  H-DEPORTABLE ALIEN  I-SENTENCE LENGTH (males only)  K-VIOLENT BEHAVIOR (females only)  L-SERIOUS ESCAPE  M-PRISON DISTURBANCE  N-JUVENILE VIOLENCE  O-SERIOUS TELEPHONE ABUSE | C |
| 17. | REMARKS | Conservative score considering PSR language about automatic weapon and informant. | |
| 18. | OMDT REFERRAL (YES/NO) | n | |

FILE IN SECTION 2 UNLESS APPROPRIATE FOR PRIVACY FOLDER

**SECTION 2**

PDF                        Prescribed by P5100                  Replaces BP-S337 of FEB 02

*Exhibit One*

I have served pro bono for several non-profit organizations helping marginalized populations and their families navigate the prison system. (FedCURE/Out4Good/Choosing Integrity) I am a member of the Corrections Committees of the National Association of Criminal Defense Lawyers (NACDL) and the American Bar Association (ABA). I have testified in federal district courts throughout the United States and the United Kingdom. I was a lecturer at the university level and have taught several courses including one entitled "The American Prison."

My most recent rewarding government contract work as an expert is supporting post-conviction petitions by submitting formal declarations and testifying for juvenile and young adult lifers sentenced in the D.C. Superior Court regarding the Incarceration Reduction Amendment Act (IRAA) and Second Look Act.

My passion is federal prison reform, and my mantra is that many proactive reforms can be accomplished under the existing policy and statutory framework through leadership, accountability and transparency. My analytical ability in combination with my practical experience provides me with insights which is advantageous for clients, attorneys, legislators, the media and reform organizations. I have appeared on several national television and radio programs as a commentator and have been quoted in national print media. I have authored chapters in two ABA Books on mental health issues and articles in the Federal Sentencing Reporter, The Hill as a "Opinion Contributor" and Bloomberg Law Insights as an "Outside Editor."

**Current Work Experience**

***The Federal Prison Education and Reform Alliance-*** Executive Director -Non-profit providing education and support to the federal justice community and direct services to the incarcerated. July 26, 2023-Present

***My Federal Prison Consultant***, *LLC-* President& Founder, supports counsel, clients and families on both technical policy issues and general prison support on all areas of the BOP. I testify around the country on BOP issues relevant to mitigation. July 2011-Present www.mfpcllc.com

***Choosing Integrity***, Board Member – CI staff have been visiting federal prisons and local jails for the past 10 years pro-bono offering classes in Forgiveness and mentoring the incarcerated. We recently coordinated the formulation of the Pike County, PA re-entry task force. https://www.choosingintegrity.org/about/

**Prior Work Experience**

***Prisonology***, VP- Operations & Co-founder, Consulted, testified and developed CLE's which are delivered to federal defenders, judges and CJA panel attorneys. September 2014- Feb. 2022.

***FedCURE***, Director of Programs and Case Management Services, Assist the incarcerated and their families relative to federal prison issues, pro bono via a designated BOP liaison in the central office. July 2011- June 30, 2023. www.fedcure.org

*Out4Good, LTD,* Executive Director- In charge of developing the "Correcting Corrections in America initiative", April 2013 to April 1, 2024.  Stepped down to a regular board member position to focus on PERA.   www.out4good.org

*Marywood University,* Lecturer PA- Criminal Justice Professor- courses entitled: "Community Corrections," "Shadow and Service" and "The American Prison."  January 2013-January 2019

*Federal Bureau of Prisons*, Correctional Treatment Specialist & Case Mgt. Coordinator- I was responsible for the counseling, classification, inmate discipline and re-entry. I coordinated institution programs and trained staff in classification & correctional programs.
- Special expertise with high profile Organized crime figures, the Witness Protection (WITSEC) program & White-Collar Crime offenders
- Alternate Case Management Coordinator 1991 to 2011
- Assignments (TDY) in the Regional Office, Philadelphia, PA. (CIM Coordinator/Correctional Programs), New York City Community Corrections Office (processing designations and halfway house referrals) & several National (DC) policy writing work groups.
- Annual Training Instructor in the areas of security designation and classification, Central Inmate Monitoring (CIM,), FOIA/Privacy Act & Victim Witness program.
- Member of Hostage Negotiations Team in the capacity of Lead Negotiator.
- Received 3 **National** Awards for Excellence in Administration & Detention Procedures National Correctional Treatment Specialist of the Year &  Excellence in Training Award.
- Taught Institution familiarization orientation to new staff & was assigned as a mentor and trainer for college interns and newly appointed case managers and counselors.
- Held assignments as Camp Administrator, Case Management Coordinator, Unit Manager and held the position of Assistant Case Management Coordinator.
- Liaison for US Parole Commission, US Marshals, FBI and ICE
- Worked in minimum, low, medium, administrative (including high security) & Witness Security (WITSEC) units.

*Commonwealth of Pennsylvania,*  Probation and Parole Officer- Supervised a caseload of adults and juveniles. Appeared in court on a weekly basis, prepared pre-sentence reports, submitted parole recommendations to the court, provided community supervision of offenders and managed the work release and ARD programs. ( Internship with Scranton District Office of the PA Board of Probation and Parole).

 **Army National Guard,** (E-5) Easton, PA 1986-1995
- **Military Police** (MP-95 Bravo), Ft. McClellan, AL
- **Stinger Missile Gunner**    (16 Sierra), Ft. Gordon, Ga.

**Education**

Marywood University, Scranton, Pennsylvania
- **Master of Science in Criminal Justice** 1997 (Concentration in Public Administration)

East Stroudsburg University, East Stroudsburg, Pennsylvania
- **Bachelor's Degree in Sociology/Anthropology** 1985

**Awards**
- 1998 National Community Corrections Award
- 1990 National Correctional Treatment Specialist of the Year
- 1991 National Excellence in Annual Training Award
- Received thirty-two other monetary personal achievement awards.

**Other Activities/memberships**

- Testified on Capitol Hill to the Colson Task Force on Federal Corrections
- 32nd Annual National Seminar on Federal Sentencing on mental health training w/ Attorney Elizabeth Kelley for the NACDL/ABA/Tampa Federal Bar- Orlando, May 2023
- AOUSC Instructor (Defender Investigator and Paralegal Seminar) Houston TX May 2023
- AOUSC Instructor (Winning Strategies Seminar-BOP Mental Health) Austin, TX 2019
- Article on BOP Restrictive Housing in the Federal Sentencing Reporter
- Authored Chapter's in ABA Publications (Editor-Elizabeth Kelley) books on Autism Spectrum Disorders (2019) & Suicide and Its Impact on the Criminal Justice System (2021)
- Provides training on federal prison issues to federal defenders, Judges & the AOUSC
- Numerous National media outlet appearances for commentary (CNBN/Fox)
- NACDL Corrections Committee since 2011
- ABA Corrections Committee 2012- Chaired Standing sub-committee on BOP Policy
- Monthly contributor to the Sentencing Partners Newsletter from Joaquin & Duncan
- Finance Committee Chair-United Methodist Church
- Authored OP Eds in The Hill regarding BOP issues
- Member of the U.S. Ombudsman Association (USOA)
- Member of the PA Prison Society
- Overall offender advocacy & general federal prison & legislative reform efforts
- Hiking, Fishing, Leisure Travel

# References, testimonials and award letters are available upon request.